UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61529-CIV-MARRA/JOHNSON

MERCURY TELCO GROUP, INC.,

    Plaintiff,

vs.

EMPRESA DE TELECOMMUNICACIONES
DE BOGOTA S.A. E.S.P.,

    Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant EMPRESA DE TELECOMMUNICACIONES DE BOGOTA S.A. E.S.P.'s ("Defendant") Motion to Dismiss this Action in Favor of Arbitration, or Alternatively, to Stay Action (DE 19), filed May 29, 2009. The motion is fully briefed and ripe for review. The Court held a hearing on the motion on October 1, 2009. The Court has carefully considered the motion, response, supplemental response, and reply, and is otherwise fully advised in the premises.

I. Background

MERCURY TELCO GROUP, INC. ("Plaintiff") brings this seven-count Complaint alleging anticipatory breach of contract (count I), tortious interference (counts II-IV), fraud in the inducement (count V), violation of Federal Lanham Act (count VI), and defamation (count VII). The facts giving rise to this Complaint stem from a January 21, 2005 Prepaid Card Cooperation Agreement (the "Agreement"), wherein the parties agreed to commercialize prepaid calling cards

1

for long distance calls.  Under the Agreement,  Mercury was to provide the calling cards and ETB was to provide the infrastructure and telephone services.  (Compl.¶ 6.)  Attached to the Complaint is a copy of the Agreement in the original Spanish.  (Comp. Exh. A).  An English translation of the Agreement is attached to Defendant's motion to dismiss. See DE 19, Exh. A.  Regarding dispute resolution, the Agreement states as follows:

> Any dispute between the parties relating to the execution, interpretation, existence, validity, performance, termination, liquidation and other aspects of the Agreement shall be resolved first within the Oversight Committee.  If no agreement is reached, the dispute shall be submitted to the legal representatives of the parties to seek a direct resolution by them; in the absence of a complete or definitive resolution, the dispute shall be submitted by either Party to an Arbitral Tribunal, composed of (1) arbitrator who is an attorney and a Colombian citizen.  The Parties shall select the arbitrator by mutual agreement, pursuant to the rules of the arbitration Center and pursuant to the applicable law.  The arbitrator shall decide at law and his or her judgment shall be final and binding upon the Parties.  The Tribunal shall abide by Decree 1818 of 1998 and the other legal provisions amending or supplementing it.
> The Arbitral Tribunal shall be seated in the city of Bogota, will operate in Spanish, at the Arbitration and Conciliation center of the Bogota Chamber of Commerce and will apply the rules of said Center and Colombian law.
> The Costs of the arbitration will be borne by the non-prevailing party.  The application of this arbitration clause does not imply the suspension of the performance of this Agreement in any way, and therefore the Parties must continue fulfilling their obligations while the dispute that led to the installation of the Arbitral Tribunal is resolved.

Id. at § 26.

In moving to compel arbitration and dismiss the complaint, Defendant argues that the arbitration clause encompasses each of the claims in the Complaint and that the strong public policy favoring arbitration requires that this case be dismissed. (DE 19 at 5, 7-14.)  In response, Plaintiff argues some of its claims, particularly fraud in the inducement of the entire Agreement, should be heard by the Court, rather than by the arbitrator.

II. Discussion

There is a strong federal policy supporting arbitration agreements. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). One of the purposes of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. is to "ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219, (1985). As such, arbitration agreements must be "rigorously enforce[d]" by the courts. Id. at 221; see also DePaoli v. Exotic Motorcars and Jewelry, Inc., 2008 WL 4279645, *1 (S.D. Fla. 2008).

Federal arbitration law is codified in the three chapters of Title 9 of the United States Code. The Federal Arbitration Act ("FAA"), enacted in 1947, comprises the first chapter. See 9 U.S.C. §§ 1-14. The "Convention on the Recognition and Enforcement of Foreign Arbitral Awards," implementing the treaty of the same name, was enacted in 1970. This statute, commonly called the New York Convention, comprises the second chapter. See 9 U.S.C. §§ 201-208. The third chapter implements the Inter-American Convention on International Commercial Arbitration. See 9 U.S.C. §§ 301-307. See Rogers v. Royal Caribbean Cruise Line, 547 F.3d 1148, 1152-1153 (9th Cir. 2008); Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1440 (11th Cir. 1998).

The Inter-American Convention on International Commercial Arbitration [opened for signature Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245,] (the "Panama Convention") (reprinted after 9 U.S.C. § 301) mandates that a court must enforce arbitral clauses in agreements within the scope of the Convention: "[a]n agreement in which the parties undertake to submit to arbitral decision any differences that may arise or have arisen between them with respect to a commercial transaction is valid." 9 U.S.C.A § 301.

Additionally, the New York Convention, implemented at 9 U.S.C. §§ 201-208, provides that "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract or agreement described in section 2 of this title, falls under the Convention."

> The New York Convention is incorporated into federal law by the FAA, which governs the enforcement of arbitration agreements, and of arbitral awards made pursuant to such agreements, in federal and state courts. See Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 269-73 (1995). Chapter 2 of the Act, 9 U.S.C. §§ 201-208, mandates the enforcement of the New York Convention in United States courts. See 9 U.S.C. § 201. Chapter 2 generally establishes a strong presumption in favor of arbitration of international commercial disputes.

Industrial Risk Insurers, 141 F.3d at 1440 (emphasis added).

The FAA has created "a body of federal substantive law" which is applicable in both state and federal court. Southland Corp. v. Keating, 465 U.S. 1, 12 (1984); see also Goodman Ltd. Partnership v. THF Construction, Inc., 321 F.3d 1094, 1097 (11th Cir. 2003). Moreover, the FAA guides the courts in enforcing arbitration agreements: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the FAA allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" under an otherwise valid arbitration clause to seek an order from a court compelling arbitration. 9 U.S.C. § 4.

In reviewing a motion to compel arbitration, a district court must consider three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists,

and (3) whether the right to arbitrate was waived[1]. See, e.g., Integrated Sec. Services v. Skidata, Inc., 609 F.Supp.2d 1323, 1324 (S.D. Fla. 2009). A court may dismiss a case where it determines that the claims sued upon are arbitrable under the relevant agreement. See id.; Allen v. Royal Caribbean Cruise, Ltd., 2008 WL 5095412 (S.D. Fla. 2008).

Here, Defendant argues that the Court need not even address the issue of whether Plaintiff's claims are arbitrable under the Agreement because the arbitration clause in the Agreement calls for the arbitrator to decide that issue. (Mot. at 5). "[W]hen ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership, 432 F.3d 1327, 1332 (11th Cir. 2005), quoting Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir. 2005). See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, (1995) (holding that the question of who has the primary power to decide arbitrability turns upon whether the parties agreed to submit that question to arbitration).

Defendant claims that the Agreement provides clear and unmistakable evidence that the parties agreed to entrust the question of arbitrability to the arbitrator selected pursuant to the terms of the Agreement and under the rules of the Arbitration and Conciliation Center of the Bogota Chamber of Commerce. See DE 19 Exh. A at § 26 (stating that the arbitrator will apply the rules of the Arbitration and Conciliation center of the Bogota Chamber of Commerce and Colombian law). The Agreement also states that "[t]he Tribunal shall abide by Decree 1818 of

---

[1] This third factor regarding whether the right to arbitrate was waived is not at issue between the parties and, therefore, is not discussed further.

1998 and the other legal provisions amending or supplementing it." This Decree states, in pertinent part that: "[t]he Tribunal shall rule on its own jurisdiction through a ruling against which only a motion for reconsideration may be entered." Id. at Art. 147. Additionally, that same Decree provides that:

> 1. The Tribunal shall rule on its own jurisdiction.
>
> 2. Any allegation by a party that the dispute falls outside the limits of the Center's jurisdiction, or that the Tribunal is otherwise not competent to hear the dispute, shall be considered by the Tribunal, which shall determine whether it should resolve the question of its jurisdiction as a preliminary matter or when it rules on the merits of the case.

Id. at Art. 207. Further, the Rules of Procedure of the Arbitration and Conciliation Center of the Bogota Chamber of Commerce, contractually selected by the parties, provide at Article 9 that:

> Once the costs are paid, the Tribunal will indicate the date for the hearing where it will proceed to rule on its own jurisdiction and, upon assumption of said jurisdiction, it will rule on the admissibility, inadmissibility, or rejection of the request to arbitrate, in the events determined by law to be subject to this or such other proceedings.

Based on the foregoing, the Court finds clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability of the claims to an arbitrator. Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership, 432 F.3d 1327, 1332. As such, the Court may grant Defendant's motion to dismiss the action in favor of arbitration to allow the arbitrator to determine the arbitrability of Plaintiff's claims. Nevertheless, the Court will briefly address the issue of whether Plaintiff's claims fall within the scope of the arbitral clause of the Agreement.

The Court looks at the parties' intent to submit the dispute to arbitration, starting at the language of the arbitration clause, and construing any doubt in favor of arbitrability in accordance with the strong federal policy favoring arbitration. See Mitsubishi Motors Corp. v.

Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").  Here, the arbitration clause provides for arbitration of "[a]ny dispute between the parties relating to the execution, interpretation, existence, validity, performance, termination, liquidation and other aspects of the Agreement." See DE 19 Exh. A at § 26 (emphasis added).  As such, the arbitration clause is considered "broad," rather than "narrow", because it "evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218 (2nd Cir. 2001). See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (holding that arbitration clause providing for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement " was broad and encompassed claim of fraud in inducement of entire contract).  When the Court faces a broad arbitration clause, as it does here, it "should follow the presumption of arbitration and resolve doubts in favor of arbitration." Solvay Pharmaceuticals, Inc. v. Duramed Pharmaceuticals, Inc., 442 F.3d 471, 482 n.10 (6th Cir. 2006).

     Here, Plaintiff argues that its claims for tortious interference, fraud in the inducement, violation of the Federal Lanham Act, and defamation are not subject to the arbitration clause of the Agreement.  Plaintiff relies upon Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001), for the proposition that the Court should look at "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties."  Plaintiff claims that its tortious interference, fraud in the inducement, violation of the Federal Lanham Act, and defamation claims do not arise from immediate, foreseeable results of

7

the performance of contractual duties under the Agreement and, thus, are not subject to arbitration.  However, under the analysis of the Telecom case, a claim of fraud in the inducement of the entire contract is a category of claim that would be subject to arbitration:

> We have required arbitration where the tort could not have occurred but for a breach of contract.  In Gregory v. Electro-Mechanical Corp., 83 F.3d 382 (11th Cir.1996), the plaintiff claimed that the defendant induced the plaintiff to enter into a contract that the defendant had no intention of honoring; we required arbitration of the fraud tort claim as related to the contract on the theory that the tort claim would never have arisen had the defendant honored the contract.

Telecom, 248 F.3d at 1114-1115.  Moreover, in the United States Supreme Court case Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006), the court significantly narrowed the type of claims that a court may hear when faced with an arbitration clause.  The Cardegna Court began by reaffirming that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Id. at 445-46. Cardegna then extended that rule to challenges that would render the contract void or voidable and held that both of those challenges should be considered by an arbitrator as opposed to a court. Id. at 446-48.  Plaintiff's fraud in the inducement of the contract claim is precisely the type of issue that an arbitrator must resolve.

Next, the Court finds that Plaintiff's tortious interference claims (counts 2-4) clearly relate to the performance of the Agreement, as they are based upon Defendant's allegedly improper efforts to raise rates on the calling cards unilaterally in contravention of the Agreement. See Comp. at ¶ 25, 30, 35.  See also Integrated Sec. Services, 609 F.Supp.2d at 1325-26 (holding that tortious interference claims were subject to arbitration).  Plaintiff's defamation claim also relates to the performance of the Agreement.  Specifically, the defamation claim addresses the

calling card rates the parties agreed to be charged when using the calling cards. See Comp. at ¶ 51, 52. See also Integrated Sec. Services, 609 F.Supp.2d at 1325-26 (defamation claim subject to arbitration); Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 724 (9th Cir. 1999) (defamation claims were arbitrable where agreement had broad arbitration clause). Lastly, Plaintiff's Lanham Act claims are subject to arbitration under the Agreement. Plaintiff's Lanham Act claim, in essence, is that Defendant misrepresented a material fact regarding the rate that would be charged per unit for the calling cards and that Plaintiff and its consumers relied upon the misrepresentation. See Comp. at ¶ 44-49. Plaintiff's claim clearly involves the Agreement between the parties regarding the calling cards and the rates that would be charged to the customers who purchased the calling cards. See also Simula, 175 F.3d at 723-24 (Lanham Act claims were arbitrable where agreement had broad arbitration clause); NRP Group, Inc. v. Hydropress, LLC, 2007 WL 201259 (S.D. Fla. 2007) (compelling arbitration of all claims, including those for violations of the Lanham Act).

In sum, after careful consideration of controlling law, the Court finds that Plaintiff is bound to arbitrate the claims presented in the Complaint. Plaintiff's filing of this lawsuit is a preemptive attempt to avoid arbitration required under the Agreement. Plaintiff's attempt must fail. Therefore, the Court will grant the motion to dismiss the action in favor of arbitration.

III. Conclusion

Based upon the foregoing, Defendant's Motion to Dismiss this Action in Favor of Arbitration, or Alternatively, to Stay Action (DE 19) is **GRANTED**. The Complaint is hereby

**DISMISSED** in favor of arbitration.  All remaining pending motions are **DENIED AS MOOT**.

The Clerk shall **CLOSE THIS CASE**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of October, 2009.

_____
KENNETH A. MARRA
United States District Judge

copies to:
all counsel of record